**Dennis E. GATES and Shelley D. Gates, Appellant–Plaintiffs,**

v.

**TOWN OF CHANDLER, WATER DEPARTMENT, Appellee– Defendant.**

No. 87A01–9903–CV–98.

Court of Appeals of Indiana.

Dec. 17, 1999.

George C. Barnett, Jr., Sean M. Georges, Douglas K. Briody, Bowers, Harrison, Kent & Miller, LLP, Evansville, Indiana, Attorneys for Appellants.

James D. Johnson, Rudolph, Fine, Porter & Johnson, LLP, Evansville, Indiana, Attorney for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Dennis and Shelley Gates (collectively "Gates") appeal from the trial court's entry of summary judgment in favor of the Town of Chandler Water Department (the "Water Department"). The sole issue presented for our review is whether the Water Department had a duty to maintain an adequate water supply and water pressure to extinguish a fire at the Gates home.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Dennis and Shelley Gates reside in Newburgh. However, their fire protection services are provided by the neighboring town of Chandler. The Water Department installed a fire hydrant directly across the street from the Gates home. The Water Department charged Gates a

monthly fee to maintain the hydrant and the water lines connected to it.[1]

In March of 1996, the Gates home caught fire. The fire began in the garage, which is separated from the main portion of the house by a connected breezeway. The Newburgh Volunteer Fire Department responded to an emergency call shortly after the fire was discovered. When the firefighters arrived on the scene, the garage was engulfed in flames and the exterior of the breezeway leading to the main structure was also on fire.

The crew immediately sprayed water from its fire engine's water tank on the garage. To keep the fire from spreading to the main portion of the house, the firefighters placed another truck in position to use its "ladder pipe" to direct a stream of water down onto the burning garage. A supply line was then hooked to the fire hydrant located across the street from the Gates home.

Upon opening the hydrant, the firefighters were unable to carry out their initial plan because the hydrant failed to produce an adequate supply of water. Crew members noted that the pressure gauge indicated the water pressure was insufficient.[2] As a result, the firefighters devised an alternate plan which resulted in a loss of nearly ten minutes of firefighting efforts. During that time, the fire spread across the breezeway to the main structure of the Gates home. Ultimately, the fire was not extinguished until it had caused significant property damage to the home.

In February of 1998, Gates brought an action against the Water Department alleging that its failure to install and maintain the fire hydrant properly was the proximate cause of substantial damage to his home. The Water Department moved for summary judgment. Following a hearing, the trial court entered summary judgment in favor of the Water Department. Gates now appeals.

## DISCUSSION AND DECISION

### Standard of Review

■ In reviewing the trial court's ruling on a motion for summary judgment, this court applies the same standard applied by the trial court. *Schnell v. Hayes*, 710 N.E.2d 208, 210 (Ind.Ct.App.1999), *trans. denied*. Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Cacdac v. West*, 705 N.E.2d 506, 508 (Ind.Ct. App.1999), *trans. denied*. Even if the trial court does not believe that the non-moving party will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1065 (Ind.Ct.App.1995), *trans. denied*.

### Existence of a Duty

■ The Water Department does not claim immunity from liability as a governmental entity under the Tort Claims Act. *See* Indiana Code Sections 34–4–16.5–1 *et seq.*[3] Thus, we must consider Gates' claim against the Water Department for negligence. The absence of immunity does not

---

1. Any homeowner whose home is located within one thousand feet of a fire hydrant is assessed a monthly fee of $1.16 for "fire protection." This charge is included in the homeowner's water and sewer bill. Record at 84.

2. The residual pressure flow from the hydrant was only 2 to 5 pounds per square inch. Gates contends that the fire hydrant should be designed to maintain a minimum water pressure of 20 pounds per square inch. As a result of the deficiency in pressure at the hydrant, the flow rate was 290 gallons per minute. Gates alleges that the minimum flow required to adequately fight a residential fire is in the range of 500 to 1000 gallons per minute.

3. Recodified at Ind.Code § 34–13–3 *et seq.*

necessarily result in a legally cognizable claim of negligence. *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 283 (Ind.1994). To recover under a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant in relation to the plaintiff, (2) a failure by the defendant to conform its conduct to the requisite standard of care, and (3) an injury to the plaintiff proximately caused by the failure. *Smith v. Beaty,* 639 N.E.2d 1029, 1032 (Ind.Ct.App.1994).

■■ In this case, the issue of duty is dispositive. The existence of a duty, that is, whether the law recognizes any obligation on the part of a particular defendant to conform its conduct to a certain standard for the benefit of the plaintiff, is a question of law for the court. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). The duty of care owed to another arises as a matter of law out of some relationship existing between the parties, and it is for the court to determine whether such relations give rise to a duty. *Id.*

In its summary judgment, the trial court relied on *Boyle v. Anderson Fire Fighters Ass'n,* 497 N.E.2d 1073 (Ind.Ct.App.1986), *trans. denied.* In *Boyle,* we held:

> Although the issue has not been addressed in many years, the common law in Indiana has long recognized that a municipality is not liable to an owner of property destroyed by fire even though the destruction may have resulted from the City's failure to provide suitable equipment or an adequate supply of water with which to fight the fire, i.e., insufficient water pressure, insufficient lengths of hose, or improperly functioning hydrants.

*Id.* at 1077 (citing *Larimore v. Indianapolis Water Co.,* 197 Ind. 457, 151 N.E. 333 (1926); *Trustees v. New Albany Waterworks,* 193 Ind. 368, 140 N.E. 540 (1923); *Robinson v. City of Evansville,* 87 Ind. 334 (1882)). Gates contends that the trial court's reliance on *Boyle* is misplaced in that *Boyle* did not address the issue of municipal duty but merely applied the common law rule of sovereign immunity. In addition, Gates asserts that *Boyle* relied on older cases that were not on point.

■ While *Boyle* applied the common law rule, developments in the law of municipal tort liability since *Boyle* require further consideration of the duty question. The correct analytical framework is now the "public/private duty analysis" which draws a distinction between a duty owed to the public and a duty owed to a particular individual. *See Mullin,* 639 N.E.2d 278 (Ind.1994); *Greathouse v. Armstrong,* 616 N.E.2d 364 (Ind.1993); *Willis v. Warren Township Fire Dep't,* 672 N.E.2d 484 (Ind. Ct.App.1996), *trans. denied.* In order to recover against a governmental entity for negligence, the plaintiff must show more than a duty owed to the public as a whole. *Greathouse,* 616 N.E.2d at 368. Rather, there must have been a breach of duty owed to a private individual. *Id.* Generally, to be private, a duty must be particularized to an individual. *Simpson's Food Fair, Inc. v. City of Evansville,* 149 Ind. App. 387, 391, 272 N.E.2d 871, 874 (1971). In the context of emergency response services, this court has held that a fire department's attempt to extinguish a fire is made in response to its general duty to protect the safety and welfare of the public. *City of Hammond v. Cataldi,* 449 N.E.2d 1184, 1188 (Ind.Ct.App.1983). Thus, a special duty is not created if the department's duty is "in no way different from its duty to protect any other citizen." *Id.*

■ On appeal, Gates contends that the trial court erred when it granted summary judgment in favor of the Water Department and found, as a matter of law, that the Water Department did not owe a private duty to maintain an adequate water supply and water pressure to serve the Gates home. The Water Department counters that if it owed any such duty, Gates has failed to designate evidence establishing that such duty was anything more than that owed to the public at large. We agree with the Water Department.

■ In *Mullin v. Municipal City of South Bend,* 639 N.E.2d at 283, our supreme court clarified the distinction between public and private duties. There, a neighbor of the plaintiff called 911 when the neighbor discovered the plaintiff's house was on fire. *Id.* at 280. When the dispatcher asked if anyone was in the house, the neighbor responded, "I think so." *Id.* The City of South Bend had a written policy that whenever persons were located in a burning home, an ambulance would be dispatched along with other emergency vehicles. Nevertheless, no ambulance was dispatched until one of the fire units called for an ambulance from the scene. One of the plaintiff's children died and another was injured. *Id.* In determining whether summary judgment in favor of South Bend was appropriate, the *Mullin* court adopted the test established in *City of Rome v. Jordan,* 263 Ga. 26, 426 S.E.2d 861, 863 (1993), requiring that in order to impose a private duty on a governmental defendant, the plaintiff must show: "(1) an explicit assurance by the municipality through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking." *Id.* at 284. The *Mullin* rule is stated in the conjunctive. Thus, the plaintiff must prove all three elements in order to establish that the municipality owed a private duty to him. *Id.*

Applying this test, our supreme court concluded in *Mullin* that the plaintiff had failed to show the existence of a private duty. *Id.* at 285. In reaching its decision, the court reasoned there was no evidence that the City had assured the plaintiff that an ambulance would be dispatched to the fire immediately. *Id.* Moreover, there was no evidence of detrimental reliance because the plaintiff could not show that she was aware of the City's policy. *Id.*

Here, Gates contends that the Water Department owed him a private duty to maintain an adequate water supply and water pressure because the hydrant was located directly across the street from his home. In addition, he argues that he was assessed by the Water Department for fire protection. Finally, Gates asserts that he relied on the adequacy of the hydrant and thus did not install supplemental firefighting equipment in his home such as a sprinkler system.

For several reasons, we cannot conclude that these factors satisfy the *Mullin* test so as to establish a private duty upon which the Water Department can be held liable for the property damage incurred by Gates. First, the location of a fire hydrant directly across from the Gates home does not constitute an "explicit assurance" by the Water Department that it would act on Gates' behalf in any particular instance. *See Aldridge v. Indiana Dep't of Natural Resources,* 694 N.E.2d 313, 316 (Ind.Ct. App.1998) (policy of trimming trees at state park did not constitute express assurance by State that it would act on plaintiffs' behalf to protect them from falling trees at their campsite), *trans. denied;* *Plummer v. Board of Comm'rs of St. Joseph,* 653 N.E.2d 519, 523 (Ind.Ct.App. 1995) (mere placement of lifeguards at lake by County, standing alone, did not constitute specific assurance that guards would react to save drowning child in manner in which they were trained), *trans. denied.* Second, Gates cites no authority, and we are unaware of any, to support the proposition that the payment of a monthly service fee for fire protection establishes a private duty owed to him. Finally, there is no evidence of detrimental reliance by Gates on the adequacy of the Water Department's hydrant. Specifically, Gates presents no evidence of any representations made by the Water Department that lulled him into a false sense of security and thereby induced him to forego other available means of residential fire protection. Under these circumstances, we conclude

that Gates has failed to establish the existence of a private duty.

Still, Gates contends that a private duty exists under our holding in *Henshilwood v. Hendricks County*, 653 N.E.2d 1062 (Ind.Ct.App.1995), *trans. denied.* In that case, we held that a county's negligence in failing to maintain a ditch and in failing to warn landowners of contamination in the ditch gave rise to a private duty. *Id.* at 1068. In reaching that conclusion, we determined that the test adopted in *Mullin* does not apply to circumstances in which the government entity has itself created the plaintiff's perilous situation. *Id.* We stated that:

> The law recognizes a critical distinction between the failure to act, as in the failure to protect the welfare of citizens or to provide rescue services, and an affirmative act of negligence which in itself causes the plaintiff's harm. In the latter case, rather than a gratuitous undertaking to aid or alleviate the plaintiff's peril, the governmental entity has created the plaintiff's peril by some affirmative act. Put another way, while an entity is generally shielded from liability on the ground that the decision not to act is a policy decision, or that the duty to act is owed to the public at large and not to any particular person, a public entity may nevertheless be liable for its affirmative acts of negligence.

*Id.* (Citations omitted).

Applying *Henshilwood* to this case, Gates argues that he has suffered a particularized injury. Specifically, he maintains that the Water Department was negligent in maintaining, testing, monitoring and providing the necessary water supply to the fire hydrant located across the street from his home. He contends that such negligence caused a situation in which the firefighters who responded to a fire in his home could not effectively fight the fire and were forced to take other measures. Gates now asserts that this resulted in significantly greater damage to his home and personal property. We disagree.

In *Henshilwood,* the plaintiff's daughter became ill after playing in leaves in an area of her family's yard where water had pooled. *Id.* at 1064. The water, which was contaminated with E-coli bacteria, had pooled in the yard after overflowing from a ditch owned by the county. *Id.* We concluded that a private duty existed because there was evidence that the county was aware the ditch water contained bacteria and that the ditch was overflowing but the county failed to warn neighboring landowners. *Id.* at 1068. Moreover, only the plaintiff and another neighbor had experienced flooding of the contaminated water from the ditch on their land. *Id.* at 1068 n. 2. In sum, the hazard itself was attributable to the county.

Here, notwithstanding the degree to which the lack of water pressure may have exacerbated the damage to the Gates home, Gates has failed to present any facts demonstrating that the Water Department's alleged negligence caused the fire. In other words, there is no evidence that the Water Department created the peril by some affirmative act. Thus, the *Henshilwood* analysis is inapposite.

## CONCLUSION

Our review of the evidence most favorable to Gates reveals no assurance by the Water Department that it would maintain its fire hydrant with adequate water supply and pressure to extinguish a fire in his home. In addition, there is no evidence of any detrimental reliance or affirmative act by the Water Department creating the peril. Under these circumstances, Gates has failed to establish the existence of a private duty. The trial court properly entered summary judgment for the Water Department.

Affirmed.

STATON, J., and RUCKER, J., concur.