No. 10,069.

ROBINSON *v.* THE CITY OF EVANSVILLE.

CITY.—*Negligence of Fire Department.*—A city authorized to maintain and maintaining water-works and a fire department, and collecting taxes for that purpose, is not responsible for the negligence of its fire department in permitting the property of a citizen to be burned.

From the Vanderburgh Circuit Court.

*W. F. Smith, A. Gilchrist* and *A. L. Robinson,* for appellant. *C. Denby, D. B. Kumler* and *P. Maier,* for appellee.

WOODS, C. J.—Action for the alleged negligence of the appellee in suffering the destruction by fire of the appellant's dwelling-house and other property.    The complaint is, in legal effect, the same as, and in its particular averments much like, that in the case of *Brinkmeyer* v. *City of Evansville,* 29 Ind. 187.    The appellant claims a difference, because it is shown, in this instance, that relying no longer on "horse engines" and cisterns in the street, the city, at great expense, had adopted and constructed Holly water-works on an extensive and adequate plan, with hydrants suitably located, had organized a fire department well equipped with engines, hose, and other appliances, for the support of all which it had collected and was collecting taxes and water rents.

In respect to the fault of the city, it is alleged that the loss occurred through the neglect, carelessness and inefficiency of the fire department, as follows:

" 1st. The house was about seven hundred feet from the nearest hydrant, from which plenty of water could have been had, and this hydrant was only six hundred feet from the nearest hose house, known as No. 6.  The hose cart at this house has capacity to carry eight hundred feet of hose, but through neglect of the men of the fire department it contained only six hundred and fifty feet of hose, which was not sufficient in length to reach the fire from this hydrant.  If there had been eight hundred feet the fire would have been quickly extinguished and but little damage done.  This hose cart and reel arrived in good time after the alarm, but could do nothing on account of want of sufficient length of hose, and had to wait the arrival of hose carts from hose houses No. 2 and No. 9, which were three-fourths of a mile from the fire ; that the men who should have been present and fit for duty at No. 2 hose house were absent from the house and unfit for duty. The horse at said hose house No. 2, used for hauling the hose cart, had been for a long time, to the knowledge of the common council and of the chief of the fire department, balky and totally unfit for use.  On this occasion this horse balked and totally refused to go for a long time, and on this account, and of the absence of the men from the hose house, they were delayed a long time, to wit, half an hour, and during this time the house was burned to the ground.

" 2d.  Owing to the neglect of the common council and of the members of the fire department, the hose used in attempting to extinguish the fire was old and worthless, and broke repeatedly under the pressure of the water.

" 3d.  Owing to like neglect, the hydrant used on that day was filled with mud and sediment which was forced through the hose and caused it to break.

" 4th.  After the breaking of the hose, as above stated, the chief of the fire department and the men under him were guilty of great negligence in delaying to have the same repaired.

" 5th.  The chief of the fire department and the men under

him were not in their places at the giving of the alarm, and were not fit for duty. They had spent the night before drinking and carousing, and without sleep, and when the alarm was sounded they were away from their post of duty drinking and carousing at the bar of a hotel, and thus were too drunk and too stupefied by intoxicating drink to count the strokes of the fire alarm bell, and part of them started and went a long distance in the wrong direction."

An elaborate and able argument has been presented to show that this case is distinguishable from *Brinkmeyer* v. *City of Evansville, supra,* and also that the decision in that case ought not to be followed. "A long time," it is said, "has elapsed since that decision was made;" and *Haag* v. *Board, etc.,* 60 Ind. 511 (28 Am. R. 654), and *City of Greencastle* v. *Martin,* 74 Ind. 449 (39 Am. R. 93), are cited by counsel as proof of a "progressive spirit exhibited by the court during the last decade." We are not able to perceive that these cases involve either a departure or a progression in doctrine. They are clearly distinguishable, because the damages for which relief was sought in each was the natural and proximate result of the act complained of; while in this and in the *Brinkmeyer* case, the damages were remote, and could not with certainty be attributed to the alleged negligence of the appellee. The decision in the *Brinkmeyer* case is supported by authority, and, as we think, is sound in principle. It was said in the opinion then delivered, and may be repeated now, that no case has been cited which holds a municipality liable in such a case, and if such authority or precedent exists we are not aware of it. The decisions to the contrary are numerous and consistent, and the reasoning by which they are supported is satisfactory and convincing. See the following: *Patch* v. *Covington,* 17 B. Mon. 720; *Wheeler* v. *City of Cincinnati,* 19 Ohio St. 19; S. C., 2 Am. R. 368; *Fisher* v. *City of Boston,* 104 Mass. 87; S. C., 6 Am. R. 196; *Grant* v. *City of Erie,* 69 Pa. St. 420; S. C., 8 Am. R. 272; *Jewett* v. *City of New Haven,* 38 Conn. 368; S. C., 9 Am. R. 382; *Heller*

v. *Sedalia,* 53 Mo. 159; S. C., 14 Am. R. 444; *Hayes* v. *City of Oshkosh,* 33 Wis. 314; S. C., 14 Am. R. 760; *Field* v. *City of Des Moines,* 39 Iowa, 575; S. C., 18 Am. R. 46; *Davis* v. *City Council,* 51 Ala. 139; S. C., 23 Am. R. 545; *Tainter* v. *Worcester,* 123 Mass. 311; S. C., 25 Am. R. 90; *Hafford* v. *City of New Bedford,* 16 Gray, 297; *Kelley* v. *City of Milwaukee,* 18 Wis. 83; *Faulkner* v. *City of Aurora,* 85 Ind. 130; Dillon Munic. Corp., sec. 774.

Judgment affirmed, as of the date of the submission.